**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **LAWRENCE ALBERT**<br>3616 Connecticut Ave., NW #101<br>Washington, DC 20008<br><br>   *Plaintiff*<br>_____<br>v.<br><br>**SONNY PERDUE, SECRETARY,**<br>**U.S. Department of Agriculture**<br>1400 Independence Ave., S.W.<br>Washington, DC 20250<br><br>Serve: Channing D. Phillips, U.S. Attorney<br>         United States Attorney's Office<br>         555 4th Street, NW<br>         Washington, DC 20530<br><br>   *Defendant* | Case No.: 1:17-cv-1572 |

## COMPLAINT AND JURY DEMAND

COMES NOW PLAINTIFF, Lawrence Albert, by and through undersigned counsel, and files this Complaint, and sues the Defendant, and as cause states:

### PARTIES

1.   Plaintiff Lawrence Albert resides at 3616 Connecticut Ave., NW #101, Washington, DC 20008.

2.   Defendant U.S. Department of Agriculture, maintains a principal address at 1400 Independence Ave., S.W., Washington, DC 20250.

### JURISDICTION AND VENUE

3.   Jurisdiction in this case is based upon 28 U.S.C. §§1331. Venue in this case is based upon 28 U.S.C. §1343(a)(3), 28 U.S.C. §1343(a)(4) and 28 U.S.C. § 1391, as this action

1

involves a Defendant that is an officer or employee of the United States acting in his official capacity or under color of legal authority, or the United States that is located in this district; a substantial part of the events or omissions giving rise to the claim occurred within this district; and Plaintiff resides in this district.

4. Plaintiff has timely complied with any conditions precedent and jurisdictional prerequisites to filing suit.

5. Plaintiff exhausted any and all administrative remedies, including filing a formal complaint of discrimination with the Defendant Department of Agriculture, and requesting a hearing from an Administrative Judge pursuant to 29 C.F.R. § 1614.108(g).

6. On May 4, 2017, Plaintiff Albert filed a Notice to Withdraw his Request for a Hearing and requested that the Administrative Judge remand the complaint to the Agency to issue a Final Agency Decision in order for Plaintiff Albert to file a civil action in Federal District Court.

7. The Administrative Judge issued the Order of Dismissal dated May 5, 2017.

8. Defendant did not timely issue a Final Agency Decision within 40 days, nor to date.

## FACTS

9. Plaintiff Albert is currently employed at the U.S. Department of Agriculture and has been an Early Resolution Specialist within the Office of the Assistant Secretary for Civil Rights Service ("OASCR"), Early Resolution and Conciliation Division ("ERCD"), Grade GS-13, for more than fifteen years. Plaintiff Albert began his employment with the U.S. Department of Agriculture in 1980.

10.     Plaintiff Albert is Caucasian, white, male, Jewish, DOB: 1952, and engaged in prior protected EEO activity. Plaintiff Albert engaged in prior protected EEO activity when he filed the complaint of discrimination in his first EEO Complaint in 2012, naming Dr. Joe Leonard and Ms. Sheila Walcott as discriminating officials. Plaintiff Albert subsequently filed a second EEO complaint in October 2014.

11.     Plaintiff Albert's first line supervisor has been Cyrus Salazar, Director ERCD (Hispanic, white, male, Christian, DOB: 1974), since January 2014; prior to that it was Sheila Walcott for about 2.5 years (African-American, black, female, non-denominational, DOB: 1954, no prior EEO activity).

12.     Plaintiff Albert's second line supervisor was Dr. Joe Leonard (African-American, brown, male, Congregationist, DOB: 1966, no prior EEO activity) – a political appointee. Dr. Leonard previously worked in various minority centric civil rights groups, including as the Executive Director of Congressional Black Caucus and the Black Leadership Forum.

13.     Plaintiff Albert had informed Mr. Salazar, his supervisor, about his prior EEO activity early on when Mr. Salazar joined ERCD as the Director.

14.     Mr. Salazar also knew Plaintiff Albert was Jewish, which is why he invited and encouraged Plaintiff Albert to attend a Holocaust Remembrance assembly.

15.     The general workforce profile data within OASCR and ERCD exemplifies the disparity of male, Caucasian and older employees - only 10.3% are Caucasian, white, and 20.7% are male. Only 10.2% are over the age of 60, like Plaintiff Albert. Of the seven employees listed in positions at the GS-14 and higher grades, six are indicated to be Black.

16. ERCD was comprised of nine employees, of which eight were African-American; Plaintiff Albert was the only Caucasian employee in ERCD. Plaintiff Albert was also the sole male employee for several years.

17. Other than one or two political appointees, there were no non-minority, male employees hired or promoted via the selection process in OASCR during Dr. Leonard's tenure.

18. In his role as Early Resolution Specialist, Plaintiff Albert served as a case manager for disputes between employees and the Agency, conducted Alternative Dispute Resolution (ADR) sessions and performed other assignments related to ADR.

19. Plaintiff Albert received a list of pending ADR cases on or about June 27, 2012, that confirmed a co-worker, Ms. Anita Pitchford, was assigned a larger ADR caseload, as well as program cases. Anita Pitchford is African-American, black, female, Baptist, DOB: 1967, and had no prior EEO activity.

20. Ms. Walcott was responsible for assigning all cases; other co-workers presumed she did so based on caseloads of the Specialists.

21. When Plaintiff Albert asked Ms. Walcott why he was not being assigned program cases, he was told by Ms. Walcott that she was training Ms. Pitchford on those cases and Ms. Pitchford would then train him. But to date, Plaintiff Albert has never been trained on or assigned program cases.

22. The program ADR was a pilot program that started in or around 2013. Mr. Albert had previously worked on the Lean Six Sigma program to help improve it, but was never assigned program ADR work.

23. Mr. Edward Profit (African-American, black, male, nonspecific religion, DOB: 1978, no prior EEO activity) and Ms. Pitchford were assigned to work on program ADR.

24. None of the program cases that Ms. Pitchford worked on with Ms. Walcott involved mediation, and none settled.

25. Plaintiff Albert asked Ms. Walcott if he could go out to meet with different units to recruit cases, but was told no.

26. Plaintiff Albert also believed that incoming phone calls were being routed directly to Ms. Pitchford rather than him.

27. Plaintiff Albert complained to Ms. Walcott that work was not being distributed evenly. Ms. Walcott and Ms. Pitchford spent upwards of 4 hours per day for over a year in Ms. Walcott's office together. Plaintiff Albert informed Ms. Walcott that he was being treated disparately compared to Ms. Pitchford in assignments and career advancement.

28. Between June 2010 and June 2012, Plaintiff Albert was assigned 12 cases, whereas Ms. Pitchford was assigned 29, including 8 program cases.

29. The majority of the work in ERCD was Title VII rather than program (Title VI) work; there is a higher success rate in Title VII and early intervention cases.

30. Ms. Pitchford was being groomed for career advancement, given more assignments generally and specifically in program and facilitation cases, and had more direct contact with and training from their supervisor, Ms. Walcott.

31. Plaintiff Albert was not assigned or asked to participate in group facilitation cases, while Ms. Pitchford was allowed to assist Ms. Walcott on such cases. Plaintiff Albert had worked on some of those cases in 2001 and 2002, but had not been asked to participate in them when he worked for Ms. Walcott, who allowed Ms. Pitchford to gain experience in those cases.

32. Ms. Pitchford had previously worked in a support staff role at the job she came from and for several years at CPRC/ERCD.

33. Plaintiff Albert received a superior rating for the rating period October 1, 2010 through September 30, 2011.

34. Ms. Pitchford received an outstanding rating for that same time period.

35. Plaintiff Albert received a superior rating for the period October 1, 2011 through September 30, 2012.

36. Plaintiff Albert learned in August 2012, that he was slated to be reassigned out of ERCD. Plaintiff Albert opposed such an action.

37. Dr. Leonard considered reassigning Plaintiff Albert to the Conflict Services Division.

38. Plaintiff Albert was ordered by Dr. Leonard to go on detail to the Employments Complaint Division (ECD) on June 21, 2011; the detail was initially 90 days but was extended for a total detail of approximately six months.

39. Plaintiff Albert was never given a reason for why he was detailed.

40. The detail was not for cross-training.

41. Plaintiff Albert was not needed to help meet workload or backlog situations in ECD.

42. Plaintiff Albert was not provided a computer when he went on detail, so he asked for and received his computer from ERCD. When he returned from the detail, he asked to have his computer returned to him but it was not, until after the first EEO complaint was filed.

43. Plaintiff Albert was the only ERCD employee at the time to be detailed.

44. During that period, Ms. Lopez was detailed from ECD into ERCD, used Mr. Albert's office and took on work that he otherwise would have done. Ms. Lopez worked in the Conflicts Complaints Division ("CCD") in the OASCR for the Agency for about three years. Ms.

Lopez was detailed to ERCD, where she worked on updating the database, and prior to that worked in the Employment Complaints Division ("ECD").

45. Ms. Lopez previously worked with Ms. Pitchford in CCD for about one year; Ms. Pitchford scheduled mediations but Ms. Lopez did not know if she acted as a neutral. Mr. Albert's first EEO complaint was "lost" for about 18 months while it was being handled in CCD during the period that Ms. Pitchford and Ms. Lopez were working there.

46. Plaintiff Albert was sent on the detail so that Ms. Walcott could groom Ms. Pitchford and prevent Plaintiff Albert from receiving training that Ms. Walcott provided to MS. Pitchford.

47. After Plaintiff Albert opposed his detail and complained that he was being treated disparately, Ms. Pitchford was sent on a detail in 2013. Her detail involved ADR work that was similar to that performed in ERCD, unlike Plaintiff Albert's detail.

48. In September 2014, Plaintiff Albert was not selected for either of two subject positions of a GS-0301-14, Dispute Resolution Specialist position, Vacancy Announcement No. AG-OASCR-2014-0199MP.

49. The Announcement for those two positions was posted on or about June 25, 2014, and was open until July 9, 2014 for Washington, D.C.

50. Plaintiff Albert timely applied for the vacant positions of GS-0301-14, Dispute Resolution Specialist position, Vacancy announcement no. AG-OASCR-2014-0199MP through an on-line procedure on USAJOBS.

51. Plaintiff Albert was qualified for the vacant positions of GS-0301-14, Dispute Resolution Specialist position, Vacancy announcement no. AG-OASCR-2014-0199MP and met all qualification requirements for the two vacant positions.

52. Plaintiff Albert was among the approximately seven employees forwarded for consideration on the Certificate of Eligibles issued on or about July 24, 2014.

53. Plaintiff Albert was interviewed for the vacant positions of GS-0301-14, Dispute Resolution Specialist position, Vacancy announcement no. AG-OASCR-2014-0199MP.

54. The vacancy announcement did not specifically indicate that one of the two openings was for employment/Title VII and the other was for program/Title VI.

55. Plaintiff Albert learned he was not selected for either of the two vacant positions when the selections for the subject position were made on or about September 8, 2014.

56. Plaintiff Albert was not given any information regarding the reason he was not selected for either of the two vacant positions.

57. The two selectees – Mr. Profit and Ms. Pitchford - were outside of virtually all of Plaintiff Albert's protected classes - they were both African American, black, non-Jewish; one was under the age of 40 and the other was approximately 15 years younger than Plaintiff Albert; one was female; and neither engaged in prior protected EEO activity.

58. Plaintiff Albert had far superior qualifications than the two selectees based on the depth and breadth of his experience. He was the most experienced ADR Specialist.

59. Plaintiff Albert had 24 years of mediation and ADR knowledge and experience – he had completed hundreds of mediations; he was trained in three different mediation programs and previously worked for the DC Superior Court's mediation program for 14 years.

60. Plaintiff Albert had prior experience in the U.S. Department of Agriculture's Civil Rights office, worked on a Dispute Resolution Board, served as an EEO counselor for six years, and was selected for a special project detail to handle EEO backlogs due to his high level of knowledge and expertise.

61. Ms. Pitchford was a Specialist in ERCD since 2006 and prior to that was a program analyst for two years, a mediation assistant for 3 years and an EEO specialist for 1 year.

62. Mr. Profit joined the Agency in 2009; he was a specialist on detail since 2012 and prior to that was an investigator for three years. Mr. Profit had three years of ADR experience, compared with Plaintiff Albert's 20 plus years.

63. Mr. Salazar, the selecting official, had not served as selecting official for any civilian positions prior to the selections for subject positions.

64. Mr. Salazar did not provide any guidance to the interview panel members about how to rate and rank applicants.

65. Mr. Salazar sat in on the interviews and even asked a question.

66. Mr. Salazar did not, nor did the interview panel, perform any analysis to judge, analyze, rate or rank the resumes; he did not take into account his knowledge of the applicants, their experience based on their applications and resumes, nor their performance ratings.

67. Mr. Salazar, did not rely on prior work experience, history or record, did not even attempt to contact references contained in the resumes of the applicants, did not review the applications or resumes, and did not rely on any knowledge or information about work performance by Plaintiff Albert.

68. Mr. Salazar did not meet with Ms. Walcott, the prior supervisor, to talk about the strengths and weaknesses of Plaintiff Albert and/or the two selectees.

69. The interview process was overly generalized and it, as well as the interview questions, were not specific to the knowledge, skills and abilities required of the position.

70. The scoring criteria were vague, and did not provide clear guidance as to how to score and rank applicants.

71. Mr. Salazar did not perform any review of the interview scores to ensure quality control in the scoring.

72. The interview panel was made up of three individuals – Mr. William Scaggs, Ms. Alicia Rodriguez, and Mr. David King – and the interviews were attended by Mr. Salazar. None of the interview panel members had any subject matter (ADR) background or expertise.

73. Mr. William Scaggs (Caucasian, White, male, over 40, Methodist, no prior EEO activity) had only served on one interview panel in the roughly six or seven years preceding the selections at issue herein.

74. Mr. Scaggs had never observed Plaintiff Albert or the two selectees perform ADR sessions.

75. Mr. Scaggs knew that Mr. Profit had less ADR experience than Mr. Albert.

76. Ms. Alicia Rodriguez (Hispanic, White, female, over 40, Catholic, prior EEO activity) had never served on a prior interview panel and never one in OASCR before or since the selections at issue herein.

77. Ms. Rodriguez knew about Plaintiff Albert's extensive years of experience in ADR at the time of the interview; she did not know that Mr. Profit had only worked in ERCD for about two years on detail, and prior to that was an investigator in the Office of Adjudications.

78. Dr. Leonard was Mr. Profit's track team coach, socialized and went on trips together, had children on the same track team, and was best man at Mr. Profit's wedding.

79. Dr. Leonard planned to promote Mr. Profit into the subject position when he was detailed into ERCD with little ADR experience and knowledge based on their prior relationship.

80. Dr. Leonard retaliated against Plaintiff Albert by ensuring he would not be selected for either of two vacant positions.

81. The Agency maintains a high percentage of minority employees in higher graded positions within OASCR.

82. On or about November 2, 2014, Plaintiff Albert learned his initial rating of "Outstanding" was lowered to "Superior", after he had signed it.

83. Previously, Plaintiff Albert met with his supervisor, Mr. Salazar, and was informed he was being given an "Outstanding" rating.

84. Mr. Salazar changed the rating after he was instructed to reduce "Outstanding" ratings across the board by Dr. Leonard.

85. Plaintiff Albert was subjected to discrimination based on his race, color, gender age, religion, and in retaliation for engaging in protected activity when he was not selected for the subject position. This is a violation of both Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967.

86. Plaintiff Albert was subjected to discrimination, harassment and a hostile work environment based on his race, color, gender, age, religion, and in retaliation for engaging in protected activity when he was treated disparately in regards to work assignments, performance ratings, and details. This is a violation of both Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967.

## Count I
### (Title VII of the Civil Rights Act of 1964 – Race Discrimination/Harassment/Hostile Work Environment)

87. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

88. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of race in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

89. Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion based on his race.

90. Defendant treated African-American employees more favorably than Plaintiff Albert.

91. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which African-American employees were not exposed.

92. As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count II
**(Title VII of the Civil Rights Act of 1964 – Color Discrimination/Harassment/Hostile Work Environment)**

93. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

94. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of color in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

95. Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion.

96. Defendant treated black employees more favorably than Plaintiff Albert.

97. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which black employees were not exposed.

98. As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count III
### (Title VII of the Civil Rights Act of 1964 – Gender Discrimination/Harassment/Hostile Work Environment)

99. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

100. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of gender in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

101. Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion.

102. Defendant treated female employees more favorably than Plaintiff Albert.

103. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which female employees were not exposed.

104. As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count IV
### (Title VII of the Civil Rights Act of 1964 – Religion Discrimination/Harassment/Hostile Work Environment)

105. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

106. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of religion in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

107. Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion.

108. Defendant treated non-Jewish employees more favorably than Plaintiff Albert.

109. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which non-Jewish employees were not exposed.

110. As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count V

**(Title VII of the Civil Rights Act of 1964 – Retaliation Discrimination/Harassment/Hostile Work Environment)**

111.   Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

112.   Defendant's conduct as described in this Complaint constitutes discrimination on the bases of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

113.   Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion.

114.   Defendant treated employees who did not have any prior protected EEO activity more favorably than Plaintiff Albert.

115.   In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which employees who did not have any prior protected EEO activity were not exposed.

116.   As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.
WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count VI
### (Age Discrimination in Employment Act of 1967 – Age Discrimination/Harassment/Hostile Work Environment)

117. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

118. Defendant's conduct as described in this Complaint constitutes discrimination on the bases of age in violation of the Age Discrimination in Employment Act of 1967, and its implementing regulations.

119. Defendant violated the law when it subjected Plaintiff Albert to harassment and discrimination with regard to work assignments, performance ratings, details, grooming of other employees, and non-selection for promotion.

120. Defendant treated younger employees and those under the age of 40 more favorably than Plaintiff Albert.

121. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which younger employees and those under the age of 40 were not exposed.

122. As a result of the intolerable working conditions and Defendant's actions, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.
WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count VII
### (Title VII of the Civil Rights Act of 1964 - Nonselection)

123. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

124. Defendant's conduct as described in this Complaint constitutes discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, and its implementing regulations.

125. Defendant violated the law when it failed to select Plaintiff Albert for either of the two vacant positions of a GS-0301-14, Dispute Resolution Specialist position, Vacancy announcement no. AG-OASCR-2014-0199MP because of his race, color, gender, religion and in retaliation for engaging in prior protected EEO activity.

126. Defendant treated employees outside of Plaintiff Albert's protected classes more favorably than Plaintiff Albert.

127. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which employees outside of his protected classes were not exposed.

128. As a result of the nonselection, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## Count VIII
### (Age Discrimination in Employment Act of 1967 - Nonselection)

129. Plaintiff adopts and incorporates by reference all allegations of this Complaint as if fully set forth herein.

130. Defendant's conduct as described in this Complaint constitutes discrimination in violation of Age Discrimination in Employment Act of 1967, and its implementing regulations.

131. Defendant violated the law when it failed to select Plaintiff Albert for either of the two vacant positions of a GS-0301-14, Dispute Resolution Specialist position, Vacancy announcement no. AG-OASCR-2014-0199MP because of his age.

132. Defendant treated younger employees and those under the age of 40 more favorably than Plaintiff Albert.

133. In sum, Plaintiff Albert was exposed to disadvantageous terms or conditions of employment to which employees outside of his protected classes were not exposed.

134. As a result of the nonselection, Plaintiff Albert has suffered economic and noneconomic damages in the past and continuing through the present. His damages as a result of Defendant's actions are ongoing.

WHEREFORE, Plaintiff demands judgment against Defendant for equitable relief, economic and noneconomic damages, including ongoing damages, in an amount to be determined at trial, but no less than five hundred thousand dollars ($500,000.00), plus interest, fees, and costs, including reasonable attorney's fees, expert witness fees, litigation expenses, and out-of-pocket costs incurred in connection with this action, and such other and further relief this Honorable Court determines just and equitable, including all available statutory and equitable relief.

## JURY DEMAND

Plaintiff respectfully requests a jury trial in all claims so triable.

    /s/  **JASON I. WEISBROT**
Jason I. Weisbrot, Esq. (MD Bar No. 28074)
jason@sniderlaw.com

Respectfully submitted,

    /s/  **JASON I. WEISBROT**
Jason I. Weisbrot, Esq. (MD Bar No. 28074)
jason@sniderlaw.com

    /s/  **JAMES FUCHS**
Dr. James Fuchs, Esq. (Bar No. 17092)
jfuchs@sniderlaw.com
Snider & Associates, LLC
Pikesville Plaza Building
600 Reisterstown Road, 7th Floor
Baltimore, Maryland 21208
Phone: 410-653-9060
Fax:    410-653-9061

*Counsel for Plaintiff*